No. 25–70009

IN THE

# United States Court of Appeals for the Fifth Circuit

MATTHEW LEE JOHNSON,

*Plaintiff–Appellant,*

v.

BRYAN COLLIER, Executive Director, Texas Department of Criminal Justice; ERIC GUERRERO, Director, Texas Department of Criminal Justice, Correctional Institutions Division; KELLY STRONG, Warden, Texas Department of Criminal Justice, Huntsville Unit, Huntsville, Texas,

*Defendants–Appellees.*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division,
Cause No. 4:25–cv–02066

## BRIEF FOR DEFENDANTS–APPELLEES

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

STEPHEN M. HOFFMAN
Assistant Attorney General
    *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936–1400
stephen.hoffman@oag.texas.gov

*Counsel for Defendants–Appellees*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Defendants–Appellees*
> Bryan Collier, Executive Director
> Eric Guerrero, Director, Correctional Institutions Division
> Kelly Strong, Warden, Huntsville Unit
> TEXAS DEPARTMENT OF CRIMINAL JUSTICE

*Counsel for Defendants–Appellees*
> Stephen M. Hoffman, Assistant Attorney General
> OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Plaintiff–Appellant*
> Matthew Johnson

*Counsel for Plaintiff–Appellant*
> David Dow & Jeff Newberry, Houston, Texas
> UNIVERSITY OF HOUSTON LAW CENTER

> s/ Stephen M. Hoffman
> STEPHEN M. HOFFMAN
> Assistant Attorney General
> *Counsel of Record*
>
> *Counsel for Defendants–Appellees*

i

**STATEMENT REGARDING ORAL ARGUMENT**

Because there is little time before Plaintiff–Appellant's scheduled execution, and because the parties' briefs adequately lay out the facts and legal arguments, the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................ ii

TABLE OF CONTENTS ...................................................................iii

TABLE OF AUTHORITIES ..............................................................v

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION ....................................................5

STATEMENT OF THE ISSUES ..........................................................7

STATEMENT OF THE CASE ..............................................................8

    I.    Facts of the Crime ................................................................8

    II.   Punishment Facts.................................................................9

    III.  Procedural History..............................................................9

    IV.  The Setting of Johnson's Execution Date......................11

SUMMARY OF THE ARGUMENT ...................................................13

STANDARD OF REVIEW ................................................................14

ARGUMENT .....................................................................................16

    I.    The District Court Correctly Held That Johnson
          Has Not Made a Strong Showing That He Will
          Succeed on the Merits.......................................................16

          A.   Johnson's due process claim misreads the
                statute, mischaracterizes the facts, and
                misinterprets the caselaw.......................................16

B.    The district court correctly found that Johnson has not been denied equal protection. ................................................. 29

C.    Johnson has already received the remedy he seeks—an execution date set by the convicting court. His lawsuit is just mandamus in disguise. ........................... 35

D.    The *Rooker–Feldman* doctrine additionally precludes relief. ......................................... 38

II.    Johnson Will Not Suffer Irreparable Harm. ................ 39

III.    The State and the Public Have a Strong Interest in Seeing the State Court Judgment Carried Out. ...... 41

CONCLUSION ...................................................... 44

CERTIFICATE OF SERVICE ............................... 46

CERTIFICATE OF COMPLIANCE ....................... 47

ELECTRONIC CASE FILING CERTIFICATIONS ......................... 48

# TABLE OF AUTHORITIES

## Cases

*Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012) ...................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 34

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ............................................ 14, 40

*Barr v. Lee*, 591 U.S. 979 (2020) ............................................................. 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 34

*Belyeu v. Johnson*, 82 F.3d 613 (5th Cir. 1996) ................................ 22, 26

*Bible v. Davis*, 739 F. App'x 776, 773 (5th Cir. 2018).............................. 2

*Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215 (5th Cir. 2012) ........... 30

*Buck v. Davis*, 580 U.S. 100 (2017)......................................................... 27

*Bucklew v. Precythe*, 587 U.S. 119 (2019) ........................................... 4, 42

*Calderon v. Thompson*, 52 U.S. 538 (1998)....................................... 15, 42

*California v. Texas*, 593 U.S. 659 (2021) ................................................ 36

*Carmouche v. Hooper*, 77 F.4th 362 (5th Cir. 2023).............................. 18

*Crutsinger v. Davis*, 930 F.3d 705 (5th Cir. 2019)................................... 3

*Crutsinger v. Davis*, 936 F.3d 265 (5th Cir. 2019).................................. 42

*Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998) ........................................ 16

*Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009) ..... 17

*Engle v. Isaac*, 456 U.S. 107 (1982)........................................................ 28

*Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008)..........................32

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)...38

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ...........32

*Ford v. Wainwright*, 477 U.S. 399 (1986) ..............................................22

*Gomez v. United States Dist. Court*, 503 U.S. 653 (1992)......................42

*Goodrum v. Quarterman*, 547 F.3d 249 (5th Cir. 2008) ..................39, 41

*Green v. Johnson*, 160 F.3d 1029 (5th Cir. 1998) ..................................30

*Herrera v. Collins*, 506 U.S. 390 (1993) ................................................15

*Hill v. McDonough*, 547 U.S. 573 (2006)............................... 4, 13, 14, 43

*Hilton v. Braunskill*, 481 U.S. 770 (1987)..............................................16

*John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000) ................29

*Johnson v. De Grandy*, 512 U.S. 997 (1994) ..........................................39

*Kemlon Products & Dev. Co. v. United States*, 646 F.2d 223 (5th Cir. 1981) ........................................................................................................32

*Kovacic v. Villarreal*, 628 F.3d 209 (5th Cir. 2010) ..............................17

*Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454 (1989)..........................18

*Lance v. Dennis*, 546 U.S. 459 (2006) ..............................................36, 38

*Martel v. Clair*, 565 U.S. 648 (2012) .....................................................43

*Medina v. California*, 505 U.S. 437 (1992) ............................................28

*Moye v. Clerk, DeKalb Cty. Superior Court*, 474 F.2d 1275 (5th Cir. 1973) ........................................................................................................36

*Nelson v. Campbell*, 541 U.S. 637 (2004) .......................................... 13, 42

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................... 16

*Ochoa v. Collier*, 802 F. App'x 101 (5th Cir. 2020) ........................... 37, 40

*Parr v. Quarterman*, 245 F. App'x 364 (5th Cir. 2007) ........................... 22

*Petteway v. Galveston Cnty.*, 111 F.4th 596 (5th Cir. 2024) .................. 21

*Priester v. Lowndes Cnty.*, 354 F.3d 414 (5th Cir. 2004) ........................ 29

*Pruett v. Choate*, H-17-2418, 2017 WL 4277206 (S.D. Tex. Sept. 25, 2017) ..................................................................................................... 37

*Reed v. Goertz*, No. 19-70022, 2025 WL 1261412 (5th Cir. May 1, 2025) ..................................................................................................... 18

*Rhines v. Weber*, 544 U.S. 269 (2005) ..................................................... 43

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ................................. 38

*Spencer v. Texas*, 385 U.S. 554 (1967) ..................................................... 28

*State v. Stephens*, 663 S.W.3d 45 (Tex. Crim. App. 2021) ...................... 23

*Summers v. Dretke*, 431 F.3d 861 (5th Cir. 2005) ............................ 40, 41

*Swarthout v. Cooke*, 562 U.S. 216 (2011) ............................................... 28

*Taylor v. Johnson*, 257 F.3d 470 (5th Cir. 2001) .................................... 29

*Total Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, 859 F.3d 325 (5th Cir. 2017) ................................................................... 16

*United States Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989) .............. 21

*United States v. Vialva*, 976 F.3d 458 (5th Cir. 2020) ...................... 16, 43

*Village of Arlington Hts. v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977) ................................................................................ 30

*Washington v. Davis*, 426 U.S. 229 (1976) .............................................. 29

*White v Johnson*, 429 F.3d 572 (5th Cir. 2005) ....................................... 2

*White v. Collins*, 959 F.2d 1319 (5th Cir. 1992) ....................................... 3

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) ............................... passim

*Wood v. Patton*, 130 F.4th 516 (5th Cir. 2025) ....................................... 3

*Young v. Gutierrez*, 895 F.3d 829 (5th Cir. 2018) ................................... 2

## Constitutional Provisions & Statutes

28 U.S.C. § 1291 ........................................................................................ 5

28 U.S.C. § 2253 ...................................................................................... 14

42 U.S.C. § 1983 ............................................................................... passim

Tex. Code Crim. Proc. Art. 43.14 ........................................................... 27

Tex. Code Crim. Proc. Art. 43.141 ................................................ passim

Tex. Elec. Code § 273.021 ...................................................................... 23

U.S. Const. amend. XIV, § 1 ................................................................... 17

## Rules & Regulations

Fifth Circuit Rule 8 .................................................................................. 5

Fifth Circuit Rule 8.10 .............................................................................. 5

Tex. R. App. P. 72.1 ................................................................................... 6

## INTRODUCTION

In May 2012, Plaintiff-Appellant Matthew Johnson entered a convenience store and poured a bottle of lighter fluid over the head of Nancy Harris, a 76-year-old store clerk. After robbing Harris and the store, Johnson set Harris on fire and calmly left, leaving Harris in flames. Harris died days later from her agonizing injuries. Trial evidence also showed that Johnson had evaded/resisted arrest, committed carjacking, threatened and acted violently towards his wife and girlfriend (once trying to set a back porch on fire), stole from his work, and unwantedly exposed himself to women. Unsurprisingly, a Texas jury convicted Johnson of capital murder and sentenced him to die.

Pursuant to the order of the convicting court, Johnson will be executed sometime after 6:00 P.M. on May 20, 2025. Johnson has already availed himself of the full state and federal appeals available to death-row inmates in Texas. A mere thirteen days before his scheduled execution, Johnson filed the instant federal civil rights lawsuit under 42 U.S.C. § 1983. ROA.4.[1] He also moved for a stay of execution. ROA.419. However, the district court denied Johnson's motion for a stay

---

[1]    "ROA" refers to the Court's electronic record on appeal.

of execution. ROA.609. And because this lawsuit cannot proceed without a stay of Johnson's execution date, the district court dismissed the case with prejudice. *Id.* (citing *Young v. Gutierrez*, 895 F.3d 829, 832 (5th Cir. 2018); *Bible v. Davis*, 739 F. App'x 776, 773 (5th Cir. 2018); *White v Johnson*, 429 F.3d 572, 573–74 (5th Cir. 2005)).

The district court was correct to deny a stay of execution. A stay of execution requires potential success on the merits of the underlying action, and Johnson is not likely to succeed on the merits because his lawsuit is entirely predicated on a blatant misconstruction of state statute. Specifically, Johnson asserted below that the Defendants, representatives of the Texas Department of Criminal Justice (TDCJ), violated his due process and equal protection rights when TDCJ's counsel, the Office of the Attorney General (OAG), sent letters notifying the convicting court of the conclusion of federal habeas proceedings and offering dates on which TDCJ could conduct an execution. Johnson's complaint contended that Texas Code of Criminal Procedure Article 43.141 "makes clear that an execution date may only be set by a trial court either sua sponte, or in response to a motion filed by the office which properly represents the State in that proceeding." ROA.13–14, 23–24.

However, *this is simply untrue.* Article 43.141 does not mention the district attorney at all, let alone require that the district attorney move for an execution date. The statute only mandates that the convicting court set the execution date, subject to certain notification and timing provisions not relevant here. There is no prohibition on what information the convicting court can consider in setting a date or any restriction on contact with other state entities. Johnson's assertion below was thus completely unfounded and incorrect, and his theories for relief crumble under the weight of his misreading of the statute. His corresponding failure to show potential success on the merits therefore dictated the denial of stay application. *Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019) ("inability to establish a likelihood of success on the merits is, effectively, dispositive of the motion for stay"); *see also* ROA.602, 608 ("'[w]here the movant cannot 'present a substantial case on the merits,' the stay of execution must be denied, and the court need not consider additional factors." (quoting *Wood v. Patton*, 130 F.4th 516, 520 (5th Cir. 2025) & *White v. Collins*, 959 F.2d 1319, 1322 (5th Cir. 1992))).

Nevertheless, Johnson has also failed to show irreparable harm from the Defendants' actions. ROA.608. This is a § 1983 proceeding, so

Johnson necessarily does not challenge the fact that he is being put to death (if so, his suit would sound in habeas). ROA.16 (Johnson "does not call into question the validity of his sentence"). Rather, he merely alleges that the convicting court should have followed a slightly different procedure in setting his execution that would have yielded an identical execution order and warrant.

Furthermore, Johnson's lawsuit is dilatory. Johnson's execution was set on January 20, 2025, ROA.47–48, but he waited almost three months later, until April 14, 2025, to seek mandamus relief in the Texas Court of Criminal Appeals (CCA), ROA.130, despite the fact his claims were ripe immediately after his execution date was set. Indeed, nothing precluded a mandamus action when OAG sent its notification letter on October 2, 2024.

Johnson had the burden of persuasion on his stay request, and he was required to make "a clear showing" that he is entitled to one. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "Last-minute stays should be the extreme exception, not the norm[.]" *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019); *see also Barr v. Lee*, 591 U.S. 979, 981 (2020). Johnson failed to make the requisite showing to justify interference by the federal

courts. Almost thirteen years have passed since Johnson set Harris aflame and left her to die. The ensuing delay in carrying out Johnson's sentence should weigh heavily in the evaluation of this application for a stay, and justice for Johnson's victims should be denied no longer. Simply put, "[t]he people of [Texas], the surviving victims of Mr. [Johnson]'s crimes, and others like them deserve better." *Id.* at 149. The State's interest in the timely enforcement of Johnson's sentence is not outweighed by the unlikely possibility that he will succeed in this lawsuit. Accordingly, the district court correctly denied relief and did not abuse its discretion in denying a stay of execution and dismissing this case with prejudice, and its decision should be affirmed in all respects.

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and Fifth Circuit Rule 8. However, it is worth noting that, under Fifth Circuit Rule 8.10, if counsel for a death-sentenced inmate wishes to appeal from a district court judgment less than seven days before the scheduled execution, counsel must attach to the proposed filing a detailed explanation stating under oath the reason for the delay. Here, at the time

of filing the instant brief, undersigned counsel can find no Rule 8.10 statement attached to Johnson's Appellant's Brief or listed on the docket.

This omission is glaring, as this lawsuit was ripe no later than when Johnson's execution was set on January 20, 2025, ROA.47–48. In fact, it was likely ripe when the OAG sent its notification letter on October 2, 2024. ROA.49. Yet, Johnson delayed seeking relief in district court until May 7, 2025. ROA.4.

Johnson has contended that he could not have sought relief in federal court earlier because he was seeking state court remedies and additional documentation to support his claim. ROA.488. However, Johnson has not identified any requirement that he exhaust his claims in state court to bring this lawsuit, nor has he identified a rule or law preventing him from litigating the two matters concurrently. *Id*. Johnson has stated that he could not have sought mandamus until his execution order was signed, *see id.*, but he could have moved for a writ of prohibition when the OAG sent its first letter. *See* Tex. R. App. P. 72.1. In any event, Johnson waited almost three months after the execution order was issued to finally file for mandamus in state court. ROA.488 (motion for leave filed on April 14th).

Johnson has attributed his delay in applying for state relief to his attempts to secure additional documentation. *Id*. But Johnson did not seek the documents in question until March 10, 2025. *Id*. And, more importantly, these documents add little or nothing to Johnson's suit. As Johnson has explained, his claim is: "if the trial court sets an execution date in response to a filing (or other document) and not on its own motion, then that filing or document cannot be filed, created, or delivered to the court by an attorney with no authority to act in the proceeding." ROA.485. Under his own formulation, Johnson had everything he needed to file his claim when the OAG sent its notification letter or (at the latest) when the execution date was set.

Johnson's dilatoriness in seeking state and federal district court relief does not justify his dilatoriness in seeking federal appellate relief. Johnson's lack of alacrity should weigh heavily in the Court's balancing of the equities underlying Johnson's stay request.

## STATEMENT OF THE ISSUES

1.  Has Johnson made a strong showing on the merits when his underlying claims are predicated on a misreading of state statute and a misconstruction of the relevant facts?

2.  Has Johnson shown irreparable injury when neither his conviction nor his sentence is contested, and his requested relief is just an identical execution order made under a slightly different process?

3.  Has Johnson shown that the public interest lies in favor of delaying his execution after thirteen years of litigation?

## STATEMENT OF THE CASE

### I.  Facts of the Crime

On federal habeas review, the Court provided the following summary of the crime:

> The facts underlying Johnson's conviction are not in dispute. They were recorded on a store surveillance camera and played for the jury at Johnson's capital murder trial. In May 2012, Johnson entered a convenience store and poured a bottle of lighter fluid over the head of Nancy Harris, a 76-year-old store clerk. He then demanded money from Harris. As Harris attempted to open the cash register, Johnson stole two cigarette lighters, two packages of cigarettes, and a ring from Harris's finger.

> Once Harris opened the cash register, Johnson took the money and then set Harris on fire. As Harris frantically attempted to extinguish herself, video recordings showed that Johnson calmly walked out of the store. Police officers arrived at the convenience store soon after and extinguished the flame. Aided by descriptions given by Harris and neighborhood residents, the police quickly apprehended Johnson. Because of the incident, Harris suffered second-to-fourth degree burns over 40% of her body. She died five days later.

*Johnson v. Lumpkin*, 74 F.4th 334, 337 (5th Cir. 2023) (citation and quotation omitted).

## II.    Punishment Facts

The Court also set out Johnson's criminal history and prior bad acts:

> At the sentencing stage of Johnson's trial, several witnesses testified regarding Johnson's criminal history. A police officer and Johnson's ex-girlfriend testified about an incident in which Johnson attempted to break into an apartment where his girlfriend and her children were living. When he failed to break in, he set the back porch of the apartment on fire. Another woman testified about a separate incident where Johnson forced her out from her pickup truck, threw her to the ground, and drove off. And several police officers testified that Johnson has a history of aggravated assault, theft, and evading arrests.

*Johnson*, 74 F.4th at 338.

## III.    Procedural History

Johnson was convicted and sentenced to death in Dallas County, Texas, for the capital murder of Harris. *Johnson v. State*, No. AP-77,030, 2015 WL 7354609, at *1 (Tex. Crim. App. Nov. 18, 2015) (not designated for publication). The CCA affirmed Johnson's conviction and sentence on direct appeal. *Id*. The Supreme Court denied certiorari review. *Johnson v. Texas*, 579 U.S. 931 (2016).

9

Concurrent with his direct appeal, Johnson filed a state habeas application. *Ex parte Johnson*, No. WR-86,571-01, 2019 WL 4317046, at *1 (Tex. Crim. App. Sept. 11, 2019) (not designated for publication). The convicting court entered findings of fact and conclusions of law recommending that relief be denied. *Id.* at *2. The CCA adopted most of the convicting court's findings and conclusions, and—based on those findings and its own review—denied habeas relief. *Id.* at *3.

Johnson then filed a habeas petition in federal district court. *Johnson v. Lumpkin*, 593 F. Supp. 3d 468 (N.D. Tex. 2022). Johnson also filed a motion to recuse U.S. District Judge Ada Brown. *Id.* at 477. The district court denied Johnson's motion to recuse, denied habeas relief, and denied a certificate of appealability (COA). *Id.* at 529. This Court affirmed the denial of the motion to recuse and denied a COA. *Johnson*, 74 F.4th at 343. It subsequently denied a petition for panel rehearing and rehearing en banc in an opinion addressing ethical concerns with habeas counsel's conduct. *Johnson v. Lumpkin*, 76 F.4th 1037, 1038–39 (5th Cir. 2023) ("Counsel are strongly encouraged to confine future arguments to the limits imposed by applicable ethical rules."). The Supreme Court denied certiorari review. *Johnson v. Lumpkin*, 144 S. Ct. 829 (2024).

## IV.    The Setting of Johnson's Execution Date

On October 2, 2024, the OAG filed a letter in the convicting court in which the OAG informed the court of the conclusion of federal habeas proceedings and explained TDCJ's availability to conduct an execution. ROA.49.[2] The OAG explained that it was willing to represent the State if the local district attorney did not. *Id*. On October 3, 2024, Johnson's counsel filed a response suggesting that the OAG was improperly acting as district attorney pro tem and asked the convicting court to refrain from entering an execution order. ROA.56. On October 30, 2024, the convicting court sent an email explaining that "the Court finds that under Article 43.114 [sic] of the Texas Code of Criminal Procedure, the express authority to set the execution falls to the trial court. As the statute makes clear, this authority rests solely with the convicting court once all appellate remedies have been exhausted." ROA.63. The convicting court also requested feedback on the possible execution dates. *Id*. On November 22, 2024, the OAG replied, explaining that the proposed dates were

---

[2]    Two assistant district attorneys were served with a copy of the OAG's letter, *see* ROA.51, and the additional filings and correspondence, *see* ROA.59; ROA.62–63, 66, 71, 74, 77; ROA.92, 130, save three emails from the convicting court—two to counsel for the Director and one to defense counsel—where the convicting court responded only to the sender of a group email. *See* ROA.62, 66, 77.

"acceptable to Director Lumpkin and the family of Nancy Harris" and asking for the opportunity to resolve any conflicts with TDCJ's availability should alternate dates be proposed. ROA.66. On November 25, 2024, the convicting court replied to the OAG stating that it had not heard from "the parties" and would likely schedule Johnson's execution for April 8, 2025. *Id*. On November 30, 2024, Johnson's counsel wrote that they agreed that "the authority for setting an execution date rests solely with the convicting court," stated that counsel intended to litigate the issue of the OAG's "intermeddling," and expressed a preference for May 20, 2024, as the execution date. ROA.77. On January 16, 2025, the OAG wrote as "counsel for the Director of TDCJ-CID Division" and stated that one proposed date was no longer available, but May 20th remained acceptable to the Director and the victims. ROA.74. On January 20, 2025, the convicting court scheduled Johnson's execution for May 20, 2025. ROA.47–48.

Almost three months later, on April 14, 2025, Johnson filed a motion for leave to file a petition for mandamus in the CCA raising similar issues as the instant lawsuit. ROA.88, 130. The CCA denied that motion for leave without written order on April 28, 2025. ROA.292.

Johnson filed the instant § 1983 action and related stay motion on May 7, 2025. ROA.4, 419. The district court denied the stay and dismissed the lawsuit with prejudice on May 14, 2025. ROA.593, 610. The instant proceeding followed.

## SUMMARY OF THE ARGUMENT

Johnson clearly failed to make a compelling case for a stay in the district court. A stay of execution is an equitable remedy and, as such, it "must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill*, 547 U.S. at 584 (citing *Nelson v. Campbell*, 541 U.S. 637, 649–650 (2004)). Johnson's state and federal collateral proceedings have run their course in the many years since he was sentenced to death. The State now has a compelling interest in seeing that its laws are enforced and in carrying out executions as scheduled. Further unnecessary delay hinders that interest.

Such is especially true where, as here, Johnson cannot succeed on his claims. Johnson's claims fail to demonstrate any plausible basis for relief. Johnson's due process claim fails to identify a valid liberty interest due to his misreading of the relevant state statute. ROA.600, 604–05.

And Johnson's equal protection claim is speculative and conclusory, failing to demonstrate intentional discrimination or the lack of a rational basis for the OAG/TDCJ's actions. ROA.606–08.

Johnson had the burden of persuasion on his stay request, and he was required to make "a clear showing" that he is entitled to one. *Hill*, 547 U.S. at 584. Johnson abjectly failed to make that showing in the court below. Accordingly, the district court correctly denied a stay. And because Johnson's lawsuit cannot proceed without a stay of execution, the district court correctly terminated Johnson's lawsuit as well. ROA.609.

## STANDARD OF REVIEW

"Filing an action that can proceed under § 1983 does not entitle the [plaintiff] to an order staying an execution as a matter of course." *Hill*, 547 U.S. at 584. "It is well-established" that inmates on death row must show a "reasonable probability" that the underlying issue is "sufficiently meritorious" to warrant a stay and that failure to grant the stay would result in "irreparable harm." *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2). Indeed, "[a]pplications for stays of death sentences are expected to contain the information and materials necessary to make a careful assessment of the

merits of the issue and so reliably to determine whether plenary review and a stay are warranted." *Id.* To demonstrate an entitlement to a stay, an inmate must demonstrate more than "the absence of frivolity" or "good faith." *Id.* at 892–93. Rather, the inmate must make a substantial showing of the denial of a federal right. *Id.* In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Id.* at 893. The State's "powerful and legitimate interest in punishing the guilty," as well as its interest in finality, must also be considered, especially in a case such as this where the State and victims have for years borne the "significant costs of federal habeas review." *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring); *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (both the State and the victims of crime have an important interest in the timely enforcement of a sentence).

Thus, in deciding whether to grant a stay of execution, a court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance

of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir. 1991).

The district court's decision on a motion to stay an execution is reviewed for abuse of discretion. *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012). "When determining whether the district court abused its discretion, [the Court] review[s] questions of law de novo and factual findings for clear error." *United States v. Vialva*, 976 F.3d 458, 460 (5th Cir. 2020). This Court "may affirm the district court's rulings on any basis supported by the record." *Total Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, 859 F.3d 325, 332 (5th Cir. 2017); *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).

## ARGUMENT

## I. The District Court Correctly Held That Johnson Has Not Made a Strong Showing That He Will Succeed on the Merits.

### A. Johnson's due process claim misreads the statute, mischaracterizes the facts, and misinterprets the caselaw.

Johnson contended below that, absent deputation or appointment of a pro tem attorney, the local district attorney represents the State of

Texas as prosecutor in the state convicting court. ROA.4–5, 23–24. Johnson asserted that only the district attorney as prosecutor can move for an execution date under Texas statute, and the OAG's communications with the convicting court violated Johnson's right to procedural due process by improperly usurping the district attorney's prosecutorial function. *Id*. Johnson proposed that the remedy for this alleged due process violation is a declaratory judgment and a stay preventing his execution. ROA.43–44. However, the district court rejected this claim after ably detailing Texas's statutory scheme governing the execution process. 594–98. In view of that scheme, the district court held that Johnson's "novel arguments" were "suspect" and rested on a "weak foundation" and "shaky ground." ROA.603–04.

This Court recently summarized the necessary predicate for a plaintiff to prevail on a due process claim:

> To plead a violation of his due process rights, [a plaintiff] must show that [a defendant] deprived him of a constitutional right while acting under color of state law. *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010). "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. But process itself is not a protectable end. *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67 (2009). Rather, for the Due Process Clause to attach and its protections to obtain, a plaintiff must identify a protected "liberty interest." *Id*.

*Reed v. Goertz*, No. 19-70022, 2025 WL 1261412, at *4 (5th Cir. May 1, 2025). Once a liberty interest is established, courts consider "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Carmouche v. Hooper*, 77 F.4th 362, 366 (5th Cir. 2023) (citing *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)).

Under this rubric, Johnson's due process argument fails for several reasons. ***First***, the district court correctly found that Johnson wholly fails to identify a protected liberty interest. ROA.605–06. Johnson has further failed to show the process he received was fundamentally inadequate to protect any such interest. *See Reed*, 2025 WL 1261412, at *4.

There is obviously nothing in the federal Constitution that explicitly requires a local district attorney to move for an execution date. Nevertheless, states may create liberty interests that are protected by due process. *Id*. Below, Johnson purported to identify such a state-created interest in Article 43.141, the Texas statute governing the setting of execution dates.[3] But Johnson's argument rested on a complete

---

[3]    The district court appropriately observed that the alleged violations do not constitute a denial of due process but would instead constitute mere errors of state law. ROA.606 n.5.

misrepresentation of the statutory text. Johnson asserted that Article 43.141 only allows the sua sponte setting of a date by the convicting court, or for the district attorney to move the convicting court for an execution date. ROA.4–5, 23–24. But Article 43.141 does not mention the district attorney at all. ROA.600, 603 ('the law does not explicitly require a death warrant only to originate with a motion from the County District Attorney's Office or the convicting court itself'). Rather, Article 43.141 simply provides that:

(a) If an initial application under Article 11.071 is timely filed, the convicting court may not set an execution date before:

(1) the court of criminal appeals denies relief; or

(2) if the case is filed and set for submission, the court of criminal appeals issues a mandate.

(b) If an original application is not timely filed under Article 11.071 or good cause is not shown for an untimely application under Article 11.071, the convicting court may set an execution date.

(b-1) Not later than the second business day after the date on which the convicting court enters an order setting the execution date, a copy of the order must be sent by first-class mail, e-mail, or fax to:

(1) the attorney who represented the condemned person in the most recently concluded stage of a state or federal postconviction proceeding; and

19

(2) the office of capital writs established under Subchapter B, Chapter 78, Government Code 1.

(b-2) The exclusive remedy for a failure to comply with Subsection (b-1) is the resetting of the execution date under this article.

(c) An execution date may not be earlier than the 91st day after the date the convicting court enters the order setting the execution date.

(d) The convicting court may modify or withdraw the order of the court setting a date for execution in a death penalty case if the court determines that additional proceedings are necessary on:

  (1) a subsequent or untimely application for a writ of habeas corpus filed under Article 11.071; or

  (2) a motion for forensic testing of DNA evidence submitted under Chapter 64.

(e) If the convicting court withdraws the order of the court setting the execution date, the court shall recall the warrant of execution. If the court modifies the order of the court setting the execution date, the court shall recall the previous warrant of execution, and the clerk of the court shall issue a new warrant.

According to Article 43.141, the convicting court is responsible for setting a capital defendant's execution date, full stop.[4] Of course, as a

---

[4]    This was acknowledged by both the convicting court and Johnson's counsel. ROA.63, 67.

matter of practice, district attorneys often do move for an execution date. But Article 43.141 does not require that the district attorney move for an execution before a setting or preclude the convicting court from having communications with other entities.[5] ROA.600 ("the relevant statutes do not establish that requirement"), 604. Here, the convicting court set Johnson's execution date, exactly as envisioned by Article 43.141. The district court thus correctly held that "Johnson's arguments are suspect because they do not allege on any direct violation of a statutory provision." ROA.603. "The law neither proscribes nor limits what information a convicting court may consider in determining whether to schedule an execution, when to do so, or what date to set." ROA.596.

---

[5]    In a footnote to his complaint, Johnson offered bill analysis that suggested that, at some point in the legislative process, there was discussion of the idea that Article 43.141 should require the State's attorney serve a motion to set an execution date on the condemned or the trial court should notify the condemned if it intended to set a date sua sponte. ROA.23 n.7. Suffice it to say that the language from the analysis did not make it into the final statute (as reproduced above). It is a nullity and has no relevance here. *See Petteway v. Galveston Cnty.*, 111 F.4th 596, 604 (5th Cir. 2024) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (quotation marks and citation omitted)). The district court thus correctly rejected Johnson's reliance on legislative history to establish a requirement that the district attorney move for an execution date, observing that "Johnson has not provided any constitutional authority requiring States to follow legislative history, rather than the plain text of a statute." ROA.600–01, 603 (citing *United States Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)).

Further, setting an execution date is a ministerial function of the convicting court. *Belyeu v. Johnson*, 82 F.3d 613, 615 (5th Cir. 1996); *see also Parr v. Quarterman*, 245 F. App'x 364, 365–66 (5th Cir. 2007); ROA.595 n.1 (citing *In re State ex rel. Ogg*, 692 S.W.3d 481, 485 (Tex. Crim. App. 2024). In *Belyeu*, the Court held that "[t]he setting of the date for execution is not a critical part of the sentencing proceedings, but is rather a ministerial act implementing the judgment earlier entered." 82 F.3d at 615. The Court observed that Belyeu "through his present counsel, requested the state court to withdraw the order, and it refused. Given its ministerial character, this post-entry appearance was adequate to meet any due process rights Belyeu may have had." *Id.*; *see also Ford v. Wainwright*, 477 U.S. 399, 413 (1986) ("the fundamental requisite of due process of law is the opportunity to be heard" (quotation omitted)).

Here, Johnson was represented by counsel when the convicting court set his execution date. He made his objections known to the CCA and the convicting court, which declined to act on them. This is more than sufficient under *Belyeu* to satisfy whatever due process rights (if any) Johnson has in this ministerial function.

***Second***, the district court correctly held that "Johnson has not shown any state law or precedent that expressly prohibits the Attorney General's Office from playing some role in [the execution-setting] procedure, particularly as representative for the state agency which would carry out the execution." ROA.604. In lieu of providing this law or precedent, Johnson has previously pointed to the CCA's holding in *State v. Stephens*, 663 S.W.3d 45, 52 (Tex. Crim. App. 2021). ROA.24–25. However, the district court found that it need not resolve whether *Stephens* was applicable because "the relevant statutes are silent as to which government actors may be involved in the execution-setting context" and the convicting court was acting within its "broad discretion" in setting an execution date. ROA.604–05. The district court noted that "[b]ecause the Texas courts have not interpreted their own law to bar the [OAG] from providing information as it did here, Johnson's due process claim rests on a weak foundation." ROA.605.

Nevertheless, Johnson's reliance on the *Stephens* decision is misplaced. *Stephens* decision invalidated Texas Election Code Section 273.021, which provided the OAG with the authority to prosecute an election law offense. *Stephens*, 663 S.W.3d at 49, 57–58. The CCA held

that allowing the OAG to prosecute these offenses violated the separation-of-powers clause of the Texas Constitution, since the authority to prosecute crime is vested in Texas district attorneys (part of the judicial branch), not the OAG (part of the executive). *Id*. at 50–51, 55–56. The CCA reasoned that, absent consent and a deputization order from a local prosecutor or the request of district or county attorney for assistance, the OAG has no authority to independently prosecute criminal cases in Texas trial courts. *Id*. at 55–56.

Based on *Stephens*, which involved only matters of Texas law, Johnson tortuously reasons that the OAG's notification letter and emails were tantamount to moving for an execution date, which amounts to impermissible prosecution because the OAG is not district attorney pro tem in this case, which renders the convicting court's execution order invalid. Of course, this logic falls apart due to Johnson's misreading of the statute. Again, Article 43.141 does not require the State to move for an execution date, even if the State's attorney does sometimes make such a motion. As Johnson concedes, Article 43.141 allows the convicting court to set an execution date sua sponte. ROA.5, 37–38.

Moreover, this is obviously not an election case. And, contrary to Johnson's arguments, *see* ROA.30, nor is the OAG prosecuting Johnson in any sense of the word. Johnson's conviction and sentence were obtained by the Dallas County District Attorney's Office. 46.RR.2; 53.RR.2.[6] His appeal was opposed by the Dallas County District Attorney's Office. State's Brief, No. AP-77,030 (Tex. Crim. App. Jan. 13, 2015). His state habeas application was litigated by the Dallas County District Attorney's Office. 2.SHCR.453 (answer).[7] In contrast, the OAG merely sent an informative letter and emails to the convicting court. As explained below, this was well within the OAG's purview as legal counsel for TDCJ, the state entity responsible for carrying out Johnson's execution. ROA.597–98. Such helpful correspondence does not constitute *prosecuting* Johnson's case.[8] It merely assists in effectuating the sentence

---

[6]    "RR" refers to the reporter's record in Johnson's underlying capital trial.

[7]    "SHCR" refers to the clerk's record from Johnson's state habeas proceeding.

[8]    Johnson spills much ink trying to establish that OAG is not the district attorney pro tem in this case. ROA.25–26 & nn.8–9. But this is a mere strawman. Since Johnson erroneously believes the statute requires that the district attorney must move for an execution date, he believes he must show that the OAG is not the district attorney. But, as shown above, the premise of Johnson's argument is simply false, and there is no statutory requirement that the district attorney move for an execution date.

Nevertheless, for clarity's sake, the OAG has never claimed to be acting pro tem in this matter, and the initial notification letter sent to the convicting court

that the convicting court had already imposed and which TDCJ is statutorily required to carry out, much as TDCJ maintains custody of prisoners in noncapital cases under a sentence of confinement. No one would ever say TDCJ making arrangements with the convicting court for taking possession of an inmate following a sentence of confinement constitutes prosecuting those inmates as a district attorney. ROA.607 (input from TDCJ in the process of scheduling an execution is "hardly surprising"). And, even if *Stephens* could be plausibly stretched to cover the instant situation, that would clearly be a decision for the CCA, not the federal courts. Again, this Court has authoritatively construed the setting of an execution date as a ministerial function of the convicting court—not a prosecutorial exercise. *Belyeu*, 82 F.3d at 615.

***Third***, Johnson's complaint mischaracterized the nature of the OAG's communications with the convicting court. The OAG merely (1) informed the convicting court of the conclusion of federal habeas proceedings, (2) provided dates that its client, TDCJ, was available to conduct the court-ordered execution, and (3) offered to assist in a pro tem

---

acknowledged as much when the OAG offered to serve as district attorney pro tem in the future. ROA.49.

capacity if necessary. ROA.49. The district court agreed that "[t]he letter fell far short of being a motion." ROA.604. Furthermore, "[b]ecause Johnson has not shown any law which bars the [OAG] from providing the convicting court with information, and the [OAG] did not move for an execution date, Johnson's complaint is built on shaky ground." *Id.*

The district court's finding that the OAG's notification letter was not a motion is unquestionably correct. The OAG represents TDCJ in federal habeas proceedings. *Buck v. Davis*, 580 U.S. 100, 110 (2017) ("[T]he Texas Attorney General represents state respondents in federal habeas cases[.]"). As such, it is uniquely qualified to tell the convicting court when those proceedings are over. Further, the TDCJ-CID Director is responsible for carrying out executions under state law. Tex. Code Crim. Proc. Art. 43.14; *see also* ROA.597–98. Executions require TDCJ personnel and resources, and certain dates may conflict with previously scheduled executions (or executions in the process of being scheduled). Again, TDCJ and the OAG are uniquely qualified to explain to the convicting court the most opportune time to set an execution date. Finally, the OAG offered to assist in a pro tem capacity if necessary. The

convicting court did not find it necessary to appoint the OAG, so any complaint based on this offer is moot.

**Fourth**, the convicting court's proper application of Article 43.141 is a matter of state criminal procedure. The federal courts should not attempt to read into the statute terms simply not present in the text when the CCA—which has lawful authority over such matters—has declined the opportunity to do so. *See*, *e.g.*, *Medina v. California*, 505 U.S. 437, 444 (1992) ("[I]t has never been thought that [decisions under the Due Process Clause] establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.") (alteration in original) (quoting *Spencer v. Texas*, 385 U.S. 554, 564 (1967)). The procedure for setting an execution date is a ministerial act entirely prescribed by state law. Federal courts have little to no authority to tell state courts how to interpret matters of pure state law. As correctly observed by the district court, "'a mere error of state law is not a denial of due process.'" ROA.606 n.5 (quoting *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) & *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982)).

Simply put, Johnson has the statute, the facts, and the caselaw wrong. Given that his due process claim rests entirely on incorrect pretenses, the district court correctly denied any stay on this basis.

## B. The district court correctly found that Johnson has not been denied equal protection.

Johnson's complaint also asserted that the convicting court's order denied him equal protection. ROA.35–43. The district court rejected this claim, holding that Johnson had not shown that he was intentionally treated differently or that the Defendants did not have a rational basis for their actions. ROA.606–08.

This holding conforms to the Court's equal protection precedents. As the Court has explained:

> "[T]he Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently." *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000). In addition, the main purpose of the Equal Protection Clause is to prevent official conduct that discriminates on the basis of race. *Washington v. Davis*, 426 U.S. 229, 239 (1976). "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam); *see also Village of Arlington Hts. v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265

(1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

*Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012).

If a case does not implicate a suspect class or a fundamental right, "the appropriate standard of review is whether the difference in treatment between classes rationally furthers a legitimate state interest. Under rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016) (quotations and footnotes omitted).

Johnson's equal protection argument is facially deficient under these standards. Johnson does not allege that TDCJ is discriminating against him based on his race. He offers no controlling case that says that having the local district attorney move for an execution date is a fundamental right under equal protection jurisprudence, and his concession that a trial court may sua sponte set an execution date undermines his claim. Capital murderers do not constitute a suspect class. *See Green v. Johnson*, 160 F.3d 1029, 1044 (5th Cir. 1998). Defendants have explained a rational basis for sending such letters,

including that the OAG is uniquely situated to explain when federal habeas is complete and that TDCJ is statutorily responsible for conducting executions and for coordinating the availability of the execution chamber. ROA.597–98 ("An execution requires exact preparation."). Johnson cannot possibly maintain that there is no "reasonably conceivable state of facts" that could provide a basis for TDCJ's decision to send the letter in question. *Wood*, 836 F.3d at 539.

Indeed, instead of engaging with the standard, Johnson asserts that his execution date must be sought by the locally elected district attorney because the elected district attorney reflects the will of the county's people. Appellant's Brief at 19–22. Putting aside the fact that the statute has no such requirement, it is worth noting that the judge in this case is also an elected official who effectuates the will of the people. But more importantly, § 1983 is not the appropriate forum for vindicating Johnson's perceived broken political promises—broken political promises are avenged at the ballot box. Johnson's political argument is a non sequitur[9] and does not have relevance to the equal protection analysis,

---

[9]     Johnson's tortured analogy to the Eighth Amendment's evolving standards of decency in his complaint similarly has no purchase. ROA.36–37. Johnson provides no compelling precedent showing the cited jurisprudence or rationales have been imported into an equal protection analysis under the Fourteenth Amendment.

should not be considered by the federal courts, and most certainly does not justify any relief. *Cf. FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 396–97 (2024) ("some issues may be left to the political and democratic processes").

In conjunction with this claim, Johnson asserted below that he constitutes a class of one. ROA.39. Johnson seemed to allege there is a general practice of district attorneys moving for execution dates, and the district attorney did not make a motion in his case. Johnson attempts to reinforce this argument in his appellate briefing, noting other letters sent by the OAG in other cases.[10] Appellant's Brief at 2–3. "[A] class of one involves a discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for differential treatment absent a rational reason." *Wood*, 836 F.3d at 541. However, this doctrine is not applicable to "'forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Id.* (quoting *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 603 (2008)). In *Wood*, a

---

[10]     To the extent that any of these letters were not presented to the district court, they cannot be considered now. "A court of appeals will not ordinarily enlarge the record on appeal to include material not before the district court." *Kemlon Products & Dev. Co. v. United States*, 646 F.2d 223, 224 (5th Cir. 1981).

lethal-injection § 1983 case, the Court observed that TDCJ's strategic decisions to test some execution drugs but not others, made "in the context of an ever-changing array of suits attacking its use of capital punishment from all angles" was within the inherent discretion of the challenged action. *Wood*, 836 F.3d at 541. Likewise, TDCJ/OAG's decision to send a notification letter is a discretionary determination that rests on numerous case-specific factors, including (but not limited to) the facts of the crime, case posture, the inmate's claims or potential claims, consultation with the victims of the crime, and resource availability. Thus, like in *Wood*, Johnson's equal protection claim necessarily fails as a class of one claim.

But even if equal protection was applicable via a class of one rubric or otherwise, Johnson does not muster a shred of affirmative evidence that TDCJ/OAG intentionally sought to treat him differently than other capital inmates for any impermissible reason or that there was no rational basis for the OAG's letter. Johnson appears to argue that he is the only Dallas County inmate to be sentenced to death after the OAG sent a notification letter, *see* Appellant's Brief at 7, but that does not show that Johnson was singled out by the OAG/TDCJ. To prevail under a class

of one theory, Johnson must show that he has been "intentionally treated differently." ROA.607 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). But Johnson's own briefing shows that the OAG has sent similar letters in other cases. Appellant's Brief at 1–6. The execution setting itself is merely a downstream effect of the challenged action and was entered by a third party, the convicting court.

Johnson's claim is entirely conclusory. In general, a complaint will not survive a motion to dismiss unless it pleads sufficient facts to allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations stated in the complaint must be enough to "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, the complaint must provide "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and

internal quotations omitted). As explained above, Johnson identifies no entitlement in Article 43.141 to have the district attorney move for an execution date or any preclusion of convicting court contact with TDCJ or the OAG. And, again, Johnson cannot possibly maintain that there is no "reasonably conceivable state of facts" that could provide a basis for the OAG's decision to send the letters in question. *Wood*, 836 F.3d at 539.

Accordingly, the district court correctly held that Johnson cannot show that he is likely to prevail in his civil rights lawsuit under an equal protection theory. And because Johnson cannot show a likelihood of success in his civil rights lawsuit, the district court correctly found that he was not entitled to declaratory or injunctive relief or a stay of execution.

### C. Johnson has already received the remedy he seeks—an execution date set by the convicting court. His lawsuit is just mandamus in disguise.

The district court found it unnecessary to address the Defendants' mandamus argument. ROA.608 n.6. Nevertheless, the Defendants continue to reurge it for preservation purposes. As explained below, Johnson has already received what Article 43.141 demands—an execution date set by the convicting court. Forcing a reset would yield the

exact same thing. Johnson may assert that he is merely asking for declaratory relief and an injunction, but the true relief sought is forcing the OAG to not send letters to the convicting court or barring the convicting court from considering them. Johnson thus seeks to have the federal courts compel the convicting court to do what he believes the CCA should have required it to do. His complaint therefore raises nothing more than "dressed-up" allegations that the state court should be ordered to apply state law properly. *Pruett v. Choate*, 711 F. App'x 203, 207 nn.9–10 (5th Cir. 2017). Accordingly, Johnson's lawsuit is an improper request for mandamus relief by way of a federal court appeal of the convicting court and the CCA's rulings.[11] *See Lance v. Dennis*, 546 U.S. 459, 463 (2006) (an "aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly" (quotation omitted)); *see also Moye v. Clerk, DeKalb Cty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) ("[A] federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties

---

[11]    Johnson's transparent effort to avoid dismissal of his complaint as impermissible mandamus by naming TDCJ officials as Defendants rather than the state courts should not be condoned. *See California v. Texas*, 593 U.S. 659, 672 (2021) ("Remedies . . . ordinarily operate with respect to specific parties." (quotation marks and citation omitted).

where mandamus is the only relief sought."); *Ochoa v. Collier*, 802 F. App'x 101, 105 (5th Cir. 2020) ("[F]ederal courts do not have jurisdiction to issue the writ against a state actor or state agencies.").

Johnson is effectively seeking to compel the state court to redo the execution order under his preferred procedure—i.e., impermissible mandamus relief. The federal courts cannot seriously entertain effectively banning the OAG or TDCJ from sending letters to the convicting court. *See Pruett v. Choate*, H-17-2418, 2017 WL 4277206, at *5 (S.D. Tex. Sept. 25, 2017) ("The only relief Pruett seeks is an order compelling Texas officials to comply with what Pruett sees as the requirements of [state law], or to act so as to allow Pruett to independently effectuate his rights under [state law]. Regardless of how Pruett chooses to characterize this relief, it is, at its core, mandamus."). TDCJ is statutorily responsible for carrying out executions, and OAG is responsible for representing TDCJ. Moreover, such a ban would plainly run afoul of TDCJ or the OAG's First Amendment rights and constitute an unwarranted federal intrusion into the workings of the state criminal justice system. A violation of state procedure, even assuming one occurred, is for the state courts to correct. The federal courts should not

entertain Johnson's ill-disguised attempt to micro-manage the actions of the state court judge.

## D.    The *Rooker–Feldman* doctrine additionally precludes relief.

As with the Defendants' mandamus argument, the district court did not find it necessary to address the Defendants' *Rooker–Feldman* argument due to its decision denying a stay. ROA.608 n.6. However, the Defendants again reurge this argument for preservation purposes. The *Rooker–Feldman* doctrine, which emerged from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), prohibits "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). When *Rooker–Feldman* applies, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance*, 546 U.S. at 463.

Here, Johnson "seek[s] what in substance would be appellate review of the state judgment in a United States district court, based on

[his] claim that the state judgment itself violates [his] federal rights.'" *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). The theories underlying Johnson's lawsuit are muddled. But regardless of whether he challenges the convicting court's execution order (which itself is simply an extension of the judgment and sentence imposed at trial) or the CCA's discretionary decision to deny leave to file a petition for mandamus, *Rooker–Feldman* precludes Johnson's lawsuit, which effectively asks for the district court to sit as an appellate court over the CCA or the convicting court. As such, Johnson has no chance for success on the merits of his lawsuit and no corresponding entitlement to a stay of execution.

## II.    Johnson Will Not Suffer Irreparable Harm.

Johnson's appellate brief does not appear to argue that he will suffer from irreparable harm if his execution proceeds. *See generally* Appellant's Brief. Johnson therefore effectively concedes this issue. *Goodrum v. Quarterman*, 547 F.3d 249, 259 n.49 (5th Cir. 2008)

("Generally, arguments not raised in an appellant's opening brief are waived.).[12]

But even if Johnson did make such an argument, that argument would be meritless. While acknowledging that possibility of harm often weighs in favor of the stay in a capital case, the district court also correctly recognized that "Johnson does not ask for a different result, just a different process." ROA.603, 608. In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Barefoot*, 463 U.S. at 893. But this is a § 1983 action, which means that Johnson necessarily does not challenge the validity of his sentence. *Cf. Ochoa*, 802 F. App'x at 106. Johnson even admits as much. ROA.16 ("the claim does not call into question the validity of his sentence"), 33–34 ("Johnson does not assert that his Due Process rights are violated by the mere issuance of an execution order."); *see also* ROA.598 ("Johnson does not attack his conviction or sentence. Johnson does not question the convicting court's authority to set an execution date. Johnson instead challenges how the

---

[12]    To the extent that some kernel of an argument exists in Johnson's brief the Court should alternatively find that his argument is waived for lack of adequate briefing. *Summers v. Dretke*, 431 F.3d 861, 870 (5th Cir. 2005) (A failure "to adequately brief . . . issues" results in waiver.).

convicting court set his date."). Even under the theories of his lawsuit, when Johnson is executed, his sentence has only been lawfully fulfilled—that is not irreparable harm. Rather, in this case the harm analysis collapses into the merits analysis. Article 43.141 simply requires that the convicting court set the date and comply with various scheduling and notification requirements. It makes no mention of a motion by the State's attorney, and it does not preclude corresponding with another state official or entity. Johnson has thus gotten exactly what the Article 43.141 provides for—an execution set by the convicting court. If Johnson got the relief requested in his lawsuit, he would end up with exactly the same thing.

### III.    The State and the Public Have a Strong Interest in Seeing the State Court Judgment Carried Out.

As with irreparable harm, Johnson's appellate brief does not appear to engage with the third and fourth *Nken* factor. *See generally* Appellant's Brief. Like irreparable-harm, the district court found that these two factors—injury to other parties and the public interest—were not in Johnson's favor. ROA.608. Johnson's failure to contest the district court's holding on these points constitutes waiver or inadequate briefing. *Goodrum*, 547 F.3d at 259 n.49; *Summers*, 431 F.3d at 870.

Regardless, the district court's decision on these points is plainly correct. The State and crime victims have a "powerful and legitimate interest in punishing the guilty." *Calderon*, 523 U.S. at 556 (citation omitted). And "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew*, 587 U.S. at 149 (quotation omitted); *see Nelson*, 541 U.S. at 650 ("a State retains a significant interest in meting out a sentence of death in a timely fashion"); *Gomez v. United States Dist. Court*, 503 U.S. 653, 654 (1992) (per curiam) ("[e]quity must take into consideration the State's strong interest in proceeding with its judgment"). Once post-conviction proceedings "have run their course . . . finality acquires an added moral dimension." *Calderon*, 523 U.S. at 556. "Only with an assurance of real finality can the State execute its moral judgment in a case" and "the victims of crime move forward knowing the moral judgment will be carried out." *Id*. Consequently, the State should be allowed to enforce its "criminal judgments without undue interference from the federal courts." *Crutsinger v. Davis*, 936 F.3d 265, 273 (5th Cir. 2019) (citations and internal quotations omitted).

Here, the public's interest lies in executing sentences duly assessed, and for which years of judicial review have found no reversible error. Johnson has already passed through the state and federal collateral review process. The public's interest is not advanced by postponing Johnson's execution any further, and the State opposes any action that would cause further delay. *Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice.") (emphasis in original). Thirteen years after the commission of Johnson's crime, justice should no longer be denied. *Vialva*, 976 F.3d at 462

Moreover, it bears repeating that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death." *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). Thus, "[t]he federal courts can and should protect States from dilatory or speculative suits[.]" *Hill*, 547 U.S. at 585. As previously noted, Johnson's claims were ripe months ago when Johnson's execution was set in January, if not when the OAG sent its letter last fall. Johnson waited until April to seek state relief, and this lawsuit—belatedly filed thirteen days before the execution—is precisely the sort of "dilatory

tactic" that the Supreme Court has suggested that the courts not entertain.[13]

## CONCLUSION

The district court correctly denied a stay and dismissed Johnson's civil rights lawsuit. This Court should uphold the district court's decision and allow Johnson's execution to proceed.

---

[13] The district court acknowledged that the Defendants made a dilatoriness argument below, although it is admittedly not clear that the court adopted it. ROA.600 n.4.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
    for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals


s/ Stephen M. Hoffman
STEPHEN M. HOFFMAN
Assistant Attorney General
State Bar No. 24048978
    *Counsel of Record*
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936–1400
Fax: (512) 320–8132
Email: *stephen.hoffman@oag.texas.gov*

*Attorneys for Defendants–Appellees*

# CERTIFICATE OF SERVICE

I do hereby certify that on May 17, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing (ECF) system of the Court. The ECF system sent a "Notice of Electronic Filing" (NEF) to the following attorney of record, who consented in writing to accept the NEF as service of this document by electronic means:

David R. Dow & Jeff Newberry
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, TX 77204-6060
ddow@central.uh.edu
jrnewber@central.uh.edu

s/ Stephen M. Hoffman
STEPHEN M. HOFFMAN
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. It contains 9,364 words, Microsoft Word for Office 365, Century Schoolbook, 14 points.

s/ Stephen M. Hoffman
STEPHEN M. HOFFMAN
Assistant Attorney General

# ELECTRONIC CASE FILING CERTIFICATIONS

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

s/ Stephen M. Hoffman
STEPHEN M. HOFFMAN
Assistant Attorney General