No. 25-70009

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**Matthew Lee Johnson,**
Plaintiff-Appellant

v.

**Bryan Collier, Executive Director, Texas Department of
Criminal Justice; Eric Guerrero, Director, Texas Department of
Criminal Justice, Correctional Institutions Division; Kelly
Strong, Warden, Texas Department of Criminal Justice,
Huntsville Unit, Huntsville, Texas,**
Defendants-Appellees

_____

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civ. No. 4:25-cv-02066

_____

**PLAINTIFF-APPELLANT'S REPLY**

_____

Mr. Johnson is scheduled to be executed on May 20, 2025.

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (832) 842-4671
Email ddow@central.uh.edu

Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-6843
Fax (832) 842-4671
Email jrnewber@central.uh.edu

No. 25-70009

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**MATTHEW LEE JOHNSON,**
Plaintiff-Appellant

v.

**BRYAN COLLIER, et al.,**
Defendants-Appellees

_____

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civ. No. 4:25-cv-02066

_____

**PLAINTIFF-APPELLANT'S REPLY**

_____

**Mr. Johnson is scheduled to be executed on May 20, 2025.**

Plaintiff-Appellant Matthew Lee Johnson filed his Brief

("Appellant's Br.") on May 16, 2025. Defendants-Appellees filed their

Brief ("Appellees' Br.") on May 17. Johnson now files this Reply to

Defendants-Appellees' Brief.[1]

_____

[1] In this Reply, Plaintiff-Appellant responds only to those assertions made by
Defendants-Appellees which he deems to merit a Reply.

1

## I.    Plaintiff-Appellant has diligently pursued his claims.

Both in this Court and in the district court, Defendants have suggested that Johnson could have and should have pursued the claims he has now raised in this suit as soon as October 2, the day the AG's Office filed its letter in the trial court. *See, e.g.*, Appellees' Br. at 4, 6; ROA.447. In doing so, Counsel for Defendants misconstrues Plaintiff's claims. While the OAG's filing its letter suggesting the trial court should schedule Johnson's execution and providing unsolicited information about its execution calendar violated the separation of powers doctrine of the Texas Constitution, Johnson's claims were not completed until the trial court scheduled his execution in response to the OAG's unlawful filing.

Counsel for Defendants now argue Counsel could have filed a petition for a writ of prohibition in the Texas Court of Criminal Appeals ("CCA") as soon as October 2. Appellees' Br. at 6. However, Plaintiff could have had no reason to believe on October 2 that the AG's mere filing of its Letter would lead to a date being set, given that a date has only been scheduled in response to such a letter in this case, and perhaps one other case. *See* ROA.28-29, 39 & nn. 11, 16. Moreover, CCA

opinions suggest that the fact that no date had ever been scheduled in a situation like this (i.e, where the AG's letter did not indicate that the trial court or the DA's office had requested the AG's Office provide information about available dates to the trial court, *compare* ROA.49 *with* ROA.384 *and* Appellant's App. at 1) would make it difficult for Johnson to establish that he had a clear right to relief (a showing a petitioner is required to make when seeking relief through a petition for a writ of prohibition). *See In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013).[2]

Also now, for the first time, Defendants suggest Plaintiff could have proceeded simultaneously in the state and federal courts. As this Court is well-aware, a section 1983 plaintiff must demonstrate that he has first attempted to allow the State to correct the issues, which he seeks to have resolved in the federal courts. In cases where a prisoner's complaints can be addressed through the grievance system, the plaintiff is required avail himself of that process before he can raise his claim in

---

[2] This showing is similarly required for a petitioner seeking relief through a petition for a writ of mandamus. As explained in further detail below, while Counsel realized a petition for a writ of mandamus was an imperfect vehicle, Counsel believed then and believe now that there existed no better vehicle through which Plaintiff could have given the state courts an opportunity to address the claims Plaintiff raised in the district court. *See infra* Part.IV.

a Complaint filed pursuant to § 1983 in the federal district court. 42

U.S.C. § 1997e(a). In this case, because prison officials would have no

ability to address the merits of Johnson's claims, Johnson was not

required to avail himself of the grievance process (and Defendants have

not claim he was so required). Nevertheless, in this scenario, the

purposes of the PLRA are well served when the inmate seeks to present

his claims to the state courts, because doing so could result in his not

filing suit in the federal court. *See Jones v. Bock*, 549 U.S. 199, 204

(2007) (explaining that the exhaustion requirement "has the potential

to reduce the number of inmate suits" filed in the federal courts). The

path Plaintiff followed (i.e., first giving the state courts an opportunity

to address his claims) is the one preferred, if not required, by this

Court's and the Supreme Court's 1983 jurisprudence. Plaintiff has

diligently pursued that path.

Specifically, on March 10, Counsel filed the request that led to the

production of the emails attached to Plaintiff's Complaint as Exhibit 4,

which, contrary to Defendants assertion to this Court, were necessary to

this proceeding. ROA.82; *see* Appellees' Br. at 7. For example, it is

possible the emails would have revealed there had been an email from

the DA's Office to the trial court, made before October 2, revealing that

that office (i.e., the only one that, by law, could represent the State's

interest in the trial court, *see* Tex. Const. arts. II, § 1, V, § 21; Tex. Gov't

Code § 44.157) had requested the court schedule Johnson's execution.

While this hypothetical would certainly raise concerns about ex parte

communications, it would nonetheless be evidence that would suggest

that the trial court's scheduling Johnson's execution was in response to

a communication from the DA's office. Because Johnson pursued relief

in the courts only after availing himself of the state process that led to

his obtaining a portion of the emails he sought, we now know there

were no such emails. *See* ROA.60-79. Similarly, the emails might have

revealed that the trial court had reached out to the AG's Office before

October 2 and, in that email, indicated it was considering scheduling

Johnson's execution and asked for information related to scheduling.[3] If

---

[3] This is precisely what seems to have occurred in both *Green* and *Ruiz*, which is to say it appears that in these cases, the trial court, through is staff counsel, and the DA's Office (thorough one of two ADAs) requested the AG's office provide the court with a list of available dates. ROA.384 ("At the request of ADA O'Connor Lambert and Chief Staff Counsel O'Neil, the undersigned counsel advises the Court that [these proposed dates] are available for this execution."); Appellant's App. at 1 ("At the request of ADA Kubalak and Chief Staff Counsel O'Neil, the undersigned counsel advises the Court that numerous dates are currently available").

Counsel's efforts to obtain the emails at issue in this case had revealed there to be an email similar to this, Johnson would seemingly have no basis for pursuing his claims in either the state or federal courts. Because Johnson pursued these emails before filing suit, we know there were no such emails.

Not until April 7 did Counsel receive some of the emails they had requested. ROA.80. One week later, on April 14, Counsel filed Plaintiff's Motion for Leave to File Petition for Writ of Mandamus in the CCA. ROA.85. The CCA denied leave to file on April 28. ROA.292. One week later, Plaintiff filed his Complaint in the district court, even while still appealing the partial denial of his Rule 12 request seeking access to additional emails between the trial court and its staff counsel. Plaintiff diligently pursued the claims he presented to the district court.

## II.   Defendants, and not Plaintiff, have "blatant[ly] misconstrue[ed]" state law.

"[T]hat, absent deputation or appointment of a pro tem attorney, the local district attorney represents the State of Texas as prosecutor in the state convicting court," Appellees' Br. at 16, is not simply what Johnson contends, it is what the Texas Constitution commands. Tex. Const. arts. II, § 1 (explaining no member of one branch of state

government "shall exercise any power attached to either of the other[]"
branches), V, § 21 ("if any county shall be included in a district in which
there shall be a District Attorney, the respective duties of District
Attorneys and County Attorneys shall in such counties be regulated by
the Legislature"); Tex. Gov't Code § 44.157(a) ("The criminal district
attorney has exclusive control of criminal cases and all cases heard on
habeas corpus in the courts of Dallas County and serves as the district
attorney of all the district courts in Dallas County."); *id.* § 44.157(e)
("No other person may perform a duty of the criminal district attorney
as provided by this section unless the criminal district attorney and his
assistants are absent from the county or refuse or are unable to perform
the duty.").

An order scheduling an inmate's execution pursuant to Texas
Code of Criminal Procedure 43.141, like most, if not all, orders that can
be entered by the trial court, can either be entered by the trial court
acting on its own motion or acting in response to a request by one of the
parties. While Counsel for Defendants has written "*this is simply
untrue*," Counsel for Defendants has failed to explain how, besides the
trial court entering an order on its own motion or in response to a

suggestion from an attorney, an order could possibly be entered. Appelllee's Br. at 2-3 (acknowledging Plaintiff's actual argument before mischaracterizing Plaintiff's argument as being that a district attorney must file a motion for an execution date to be set). Plaintiff has never asserted that the district attorney must file a motion requesting the same for the trial court to enter an order scheduling the inmate's execution. Plaintiff's argument is that if the trial court is going to enter an order scheduling an inmate's execution in response to a request, and not on its own motion, then that request must be from the office with the exclusive authority to represent the State's interest in the case. That office is the district attorney's office, not the OAG.

Defendants have misconstrued state law by finding that it was permissible for the AG's Office, though not requested to do so, to advance what it believed to be the State's interests in this matter. Defendants attempt to ameliorate this clear violation of the state's separation of powers doctrine by claiming that the AG's Office wrote the October 2 Letter as TDCJ's counsel. Appellees' Br. at 2. That assertion is belied by the fact that AG's Office offered to represent the State's interests in the letter. *See* ROA.49. It sought not to represent TDCJ, but

instead to represent the State. Furthermore, the attorney who sent the October 2 Letter to the trial court (and who now holds the position previously held by the attorney who signed the October 2 Letter), sent an email to the court on January 16, 2025, which seems to make clear she did not believe she was acting as TDCJ's counsel when she sent the October 2 Letter. *See* ROA.74 ("On October 2, 2024, I submitted a letter," but "I write now as Counsel for [Defendant] Guerrero").

## III. Scheduling an execution requires the trial court to find certain conditions exist. The AG's Letter was an unlawful attempt to convince the trial court that these conditions were satisfied.

The district court, in its order denying Plaintiff's Motion for Stay of Execution, found that the CCA has indicated that setting an execution date is ministerial. ROA.595 & n.1. While Plaintiff believes the CCA has not squarely answered that question,[4] he also does not believe that whether a trial court has a ministerial duty to schedule an execution is dispositive to the issues raised in this case. Regardless of whether it is considered ministerial, a trial court does have to ensure

---

[4] The 2024 opinion cited by the district court, ROA.595 n.3, *In re State ex rel. Ogg*, 692 S.W.3d 481, 485 (Tex. Crim. App. 2024), did not hold that the trial court has a ministerial duty to schedule an execution but instead that a trial court has a ministerial duty not to withdraw an execution date that has already been set unless of of two conditions are met. *Ogg*, 692 S.W.3d at 485.

certain conditions are met before it can schedule an inmate's execution
and is well within its authority to delay in scheduling an execution until
it believes these conditions are met. For example, as Plaintiff argued in
the district court, the trial court cannot schedule an execution if it
believes that further proceedings are necessary pursuant to Chapter 64
of the Texas Code of Criminal Procedure, which provides for post-
conviction analysis of evidence containing biological evidence. *See* Tex.
Code Crim. Proc. art. 43.141(d)2). In their Brief filed in this proceeding,
Defendants appear to, reasonably, suggest that the trial court should
ensure the inmate is represented by counsel before scheduling his
execution. *See* Appellees' Br. at 22 ("Johnson was represented by
Counsel when the convicting court set his execution date."). Similarly,
Counsel suggest that, even if not required by statute, the trial court
would be well within its power to refrain from scheduling an execution
until it knew that the State's interests would be represented in any
subsequent state proceeding. That all of the OAG's Letters include an
offer from an AAG to represent the State's interests at trial, even
though that is clearly prohibited by law, absent a request from the DA's
Office, seems to indicate the AG's Office understands that a trial court

needs to be assured that the State's interest will be represented in the state court before it schedules an execution. *See* ROA.49, 384; *see also* Appellant's App.

The record suggests that the DA's office, the only office who could, in fact, represent the State's interest at trial, was not prepared to represent the State's interests in any subsequent state litigation. ROA.49. The AG's unlawful assertion that it could do so should be seen for precisely what it was: an unlawful attempt to induce the trial court to schedule Plaintiff's execution sooner than it would otherwise do so.

## IV.   The *Rooker-Feldman* doctrine does not bar Johnson's claims.

As mentioned above, there exists no state court vehicle through which Johnson could have directly raised his due process and equal protection claims. *See supra* n. 2. To be entitled to mandamus relief, the CCA would have had to have found that the Johnson had a clear right to relief. As mentioned above, the CCA's denying leave to file the mandamus, might indicate nothing more than it believed Plaintiff's claims to be too novel to be raised on mandamus. Similarly, the CCA's denying leave to file could mean that the CCA did not believe the trial court had a ministerial duty

not to schedule Johnson's execution. While the CCA's decision to
not explain its decision might make it impossible to discern which
of these two criteria it believed Johnson failed to satisfy, there can
be no doubt that the CCA did not address the merits of Johnson's
claims. Moreover, the precise claims that Johnson raised in the
district court, i.e., that the manner in which the trial court and
the CCA construed Texas law violates Johnson's rights to due
process and equal protection, could not be raised in the CCA.

The Supreme Court made clear in *Skinner v. Switzer*, 562
U.S. 521 (2011), that "it is not an impediment to the exercise of
federal jurisdiction that the same or related question was earlier
aired between the parties in the state court." *Skinner*, 562 U.S. at
532 (internal quotation marks omitted). Firmly established
doctrine and the principle of comity generally require a litigant to
avail himself of the state court process before resorting to federal
court. That roadmap is precisely the one Johnson has followed.
And as the Supreme Court has stressed in *Skinner*, it is much
better for complainants such as Johnson to first seek relief in the
state court and only then resort to a federal tribunal. *Skinner*, 562

U.S. at 530 n.8.

**V.    Because the trial court scheduled his execution only in response to an unlawful filing made by the OAG, Johnson has been treated differently than similarly situated defendants.**

The Equal Protection Clause requires Johnson be treated the same as those "similarly situated." In this case, that includes other individuals in Texas whose executions have been scheduled (and possibly also carried out) as well as those who are eligible to receive an execution date (because their federal habeas proceedings have concluded), but for whom no order scheduling an execution has been entered in a process that is violative of the State's separation of powers doctrine.

In 2018, Dallas County voters elected District Attorney John Creuzot, and since assuming office, he has not sought the death penalty in any new capital murder case.[5] In 2021, Creuzot was a signatory on

---

[5] Jim Malewitz, *John Creuzot Hasn't Sought a Death Penalty as Dallas County DA. His Opponent Says She Will*, Dallas Morning News (Sept. 21, 2022), https://www.dallasnews.com/news/crime/2022/09/21/john-creuzot-hasnt-sought-a-death-penalty-as-dallas-county-da-his-opponent-says-she-will/. However, a report published after Counsel filed Plaintiff's Complaint indicated that the office is considering seeking death in the sentencing retrial of Randy Halprin. *See* https://www.wfaa.com/article/news/local/dallas-texas-death-penalty-case-texas-seven-randy-halprin-john-creuzot/287-06196cc6-1f75-48d4-a290-0eb712d1cf7f.

an open letter to President Biden, urging him to support legislation to
end the federal death penalty and to commute the sentences of those on
death row.[6] Similarly, in early 2022, Creuzot signed a "Joint Statement
From Elected Prosecutors Pledging to Work Towards the Elimination of
the Death Penalty."[7] "On the death penalty criticism, [Creuzot has] said
an automatic life sentence is a more efficient and cost-effective way to
hold people accountable."[8] Knowing Creuzot's public opposition to the
death penalty, Dallas County voters reelected Creuzot in 2022. The
support for Creuzot in Dallas County reflects, at least in part, the
county's evolving view of the death penalty, and appears to show a
growing disapproval of its use.[9]

---

[6] Fair and Just Prosecution, *Joint Letter from Elected Prosecutors Pledging to Work Towards the Elimination of the Death Penalty* (Jan. 2021), https://fairandjustprosecution.org/wp-content/uploads/2021/01/FJP-Biden-Death-Penalty-Joint-Letter.pdf.

[7] Fair and Just Prosecution, *Joint Statement from Elected Prosecutors Pledging to Work Towards the Elimination of the Death Penalty* (Feb. 2022), https://fairandjustprosecution.org/wp-content/uploads/2022/02/FJP-Death-Penalty-Joint-Statement-2022.pdf.

[8] CBS News, **John Creuzot Wins Dallas County District Attorney** (Nov. 9, 2022), https://www.cbsnews.com/texas/news/john-creuzot-wins-dallas-county-district-attorney/.

[9] Death Penalty Information Center, **Poll: Three-Quarters of Dallas Voters Say They Prefer Life Alternatives to Capital Punishment** (Mar. 21, 2023), https://deathpenaltyinfo.org/poll-three-quarters-of-dallas-voters-say-they-prefer-life-alternatives-to-capital-punishment.

Until quite recently, the AG's office recognized that it "is not responsible for setting or requesting the setting of execution dates." ROA.503. As the office which represents the State's interest in federal habeas, that office has long recognized that it should notify district attorneys once federal habeas has concluded so those attorneys can request execution dates, should they desire to do so at that time. *See id.* ("the process is most often triggered by our office notifying the local district attorney of the status of federal court litigation"); *see also* ROA.591 (Example of a letter from an AAG to a DA informing the DA of the conclusion of federal habeas and of dates then-available on the AG's executions calendar). Only recently, and only in Dallas County, has the AG's Office determined it should bypass the elected district attorney and instead communicate directly with the court.

In this case, because the elected district attorney had made no move toward setting an execution date (likely after being informed by the AG's office that Johnson's federal habeas proceeding had concluded, *see* ROA.503), the AG's office bypassed the DA's office by filing its Letter, and offering to represent the State's interests in any

_____

subsequently filed state proceeding if the elected district attorney chose not to participate. Simply put, the October 2 Letter was an unlawful attempt by the AG's Office to impose its will in a criminal matter when the local prosecutor had made no move toward doing what the AG's Office thought it should do, which was to ask the trial court to schedule Johnson's execution, seemingly in an attempt to "rein in" a prosecutor it believes to be "rogue."[10]

Johnson's Fourteenth Amendment rights require that his execution be scheduled only when locally elected officials have found it appropriate to do so, and not after an attorney general who believes the local officials are not acting sufficiently swiftly files an unlawful letter, which seeks to assure the trial court that all the conditions for scheduling Plaintiff's execution had been met. If he is executed on Tuesday, May 20, 2025, Johnson will be the only person executed in Texas pursuant to an order entered in response to an unlawful action by the Attorney General.

---

[10] *C.f.* Press Release, Tex. Att'y Gen., Attorney General Ken Paxton Announces New Reporting Requirement to Rein in Rogue District Attorneys and Ensure the Prosecution of Violent Criminals (Mar. 31, 2025), *available at* https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-announces-new-reporting-requirement-rein-rogue-district-attorneys-and [https://perma.cc/J8RV-U2CR].

## VI.    Conclusion

Matthew Lee Johnson prays that the Court provide relief as follows:

1.    Hold that the district court erred in finding that Johnson has demonstrated he is likely to prevail on the merits of his due process and equal protection claims;

2.    Stay his execution currently set for May 20, 2025;

3.    Hold that because Johnson was entitled to a stay, the district court erred in dismissing his Complaint with prejudice; and

4.    Remand this case to the district court for further proceedings.

Respectfully submitted,

/s/ David R. Dow

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (832) 842-4671
Email ddow@central.uh.edu

/s/ Jeffrey R. Newberry

Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-6843
Fax (832) 842-4671
Email jrnewber@central.uh.edu

## Certificates of Service and
## Compliance with ECF Filing Standards

I certify that on May 18, 2025, this Reply was served, via the Court's CM/ECF Document Filing System upon the following registered CM/ECF user:

Stephen Hoffman
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Stephen.Hoffman@oag.texas.gov

Counsel further certifies that (1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus-scanning program and is free of viruses.

/s/ Jeffrey R. Newberry

_____
Jeffrey R. Newberry

## Certificate of Compliance with Rule 32(a)

1.    This Reply complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,917 words.

2.    This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.97 in 14 point Century Schoolbook font and 12 point Century Schoolbook font for footnotes.

/s/ Jeffrey R. Newberry

_____

Jeffrey R. Newberry